**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

ABIGAIL M. LEGROW
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
TELEPHONE (302) 255-0669

Submitted: January 25, 2023
Decided: February 16, 2023

**To:    All Counsel of Record**

**Re:    *Viacom Inc., n/k/a Paramount Global v. U.S. Specialty Insurance Co., et al.* (N22C-06-016 AML CCLD)**

**   *National Amusements, Inc., et al. v. Endurance American Specialty Insurance Co., et al.* (N22C-06-018 AML CCLD)**

**   *Shari E. Redstone v. ACE American Insurance Co., et al.* (N22C-06-020 AML CCLD)**

Dear Counsel,

This short letter opinion addresses the following motions: (1) Certain Defendants' Motion to Dismiss or Stay in *Viacom v. U.S. Specialty, et al.*, N22C-06-016 AML CCLD (the "Viacom Coverage Case"); (2) the Unique 2016 Insurers' Motion to Dismiss in the Viacom Coverage Case; and (3) Certain Defendants' Motion to Dismiss or Stay in *Redstone v. ACE American Insurance Co., et al.*, N22C-06-020 AML CCLD (the "Redstone Coverage Case").[1]  The law in this area

---

[1] Plaintiffs' Motion to Dismiss Relation-Back Counterclaims and to Strike Relation-Back Affirmative Defenses in *National Amusements, Inc., et al. v. Endurance American Specialty*

is settled, and an extensive analysis of that precedent in the context of the pending motions would not meaningfully add to the law's development. In other words, the motions are straightforward and can be resolved with a concise explanation of the Court's reasoning.

## Factual and Procedural Background

Only a brief factual background is warranted. There are three related insurance coverage disputes pending before the Court regarding coverage for two actions pending in the Court of Chancery (collectively, the "Chancery Cases"). The Chancery Cases arise from the 2019 merger between Viacom Inc. and CBS Corporation and assert Viacom's and CBS's directors, officers, and controlling shareholders breached their fiduciary duties in connection with the merger. Litigation in the Chancery Cases has involved exhaustive pretrial discovery and motion practice, and trial in the first action is scheduled to proceed this summer. The damages sought in the Chancery Cases far exceed the various towers of insurance implicated and at issue in the coverage cases pending before this Court.

In the three related coverage disputes, Viacom, National Amusements, Inc., and Shari Redstone seek insurance coverage for damages they ultimately may be ordered to pay as a result of a settlement or judgment in the Chancery Cases. The

_Insurance Co., et al._, N22C-06-018 AML CCLD remains under advisement. A separate decision will be issued with respect to that motion.

Viacom Coverage Case and the Redstone Coverage Case seek coverage under Viacom's tower of directors and officers ("D&O") liability insurance policies.[2] Although Viacom's insurers have paid the defense costs incurred by some of their insureds in the Chancery Cases,[3] they have denied any coverage obligation for a judgment or settlement. Among the reasons the insurers articulate for denying coverage is: (i) a dispute as to which policy period is implicated by the Chancery Cases; and (ii) whether the so-called "Bump Up Exclusion" in Viacom's policies bars coverage for any damages that might be awarded in the Chancery Cases. There are other potential disputes between the parties with respect to coverage, including "conduct exclusions" that could be implicated if a judgment is entered, and allocation of coverage in the event there are both covered and uncovered losses. Although the parties mediated the coverage disputes, the insurers steadfastly maintain there is no coverage and therefore have refused to offer any money toward possible settlement of the underlying Chancery Cases.

In June 2022, the plaintiffs filed their complaints asserting declaratory judgment and anticipatory breach of contract claims relating to the insurers' refusal to acknowledge a coverage obligation. The complaints in the Viacom Coverage

---

[2] In the third coverage action, *National Amusements, Inc. v. Endurance American Specialty Insurance Co., et al.*, N22C-06-018 AML CCLD, the plaintiffs seek coverage under National Amusements, Inc.'s D&O insurance policies. That action is not the subject of this opinion.

[3] Viacom's insurers have denied coverage for Ms. Redstone's defense costs and also have denied any coverage obligation for any settlement or adverse judgment entered against her in the Chancery Cases. *See* Compl. ¶ 3 in *Redstone v. Ace American Insur. Co.*, et al., N22C-06-020 AML CCLD.

Case named as defendants the insurers for both Viacom's 2019 insurance tower and its 2016 insurance tower because some of the 2019 insurers have taken the position that the 2016 tower, rather than the 2019 tower, is implicated by the claims in the Chancery Cases. Some of the defendant insurers answered the complaints, while others (collectively, the "Moving Defendants") moved to dismiss on the basis that the plaintiffs' claims are not ripe and will not be ripe unless and until the Chancery Cases resolve through settlement or by entry of a judgment against the insureds. The Moving Defendants additionally argue the claims are not ripe because the plaintiffs failed to comply with an alternative dispute resolution clause in the insurance policies. Finally, the insurers who issued policies in the 2016 tower, but did not issue policies in the 2019 tower (the "Unique 2016 Insurers") argue the complaint fails to state a claim against them because the plaintiffs only are seeking coverage under the 2019 tower.

**<u>Analysis</u>**

The Moving Defendants' primary argument is that this coverage dispute is not ripe. The Court considers a motion to dismiss for ripeness under Superior Court Civil Rule 12(b)(1).[4] Although the plaintiffs have alleged breach of contract claims, the focus of the parties' coverage dispute is contained in—and likely can be resolved

---

[4] *Energy Transfer Equity, L.P. v. Twin City Fire Insur. Co.*, 2020 WL 5758027, at *5 (Del. Super. Sept. 28, 2020).

through—the declaratory judgment claims. In order for this Court to exercise its jurisdiction to award declaratory relief, there must be an "actual controversy" between the parties.[5] Delaware courts consider four factors in determining whether an "actual controversy" exists; the only factor the Moving Defendants challenge is whether the controversy is "ripe for judicial declaration."[6]

Delaware courts adopt a "common sense" approach to assessing ripeness. That approach balances the interests of the party seeking immediate relief against the interests of a court in refraining from addressing questions until they are in a concrete or final form.[7] Generally speaking, a dispute is ripe if "litigation sooner or later appears to be unavoidable and where the material facts are static."[8] Several factors, known as the *Schick* factors, are relevant to this "common sense" ripeness analysis: (1) a practical evaluation of the plaintiff's legitimate interests in a prompt resolution of the question presented; (2) the hardship threatened by further delay in resolving the question; (3) the possibility that future factual development might affect the resolution; (4) the need to conserve scarce judicial resources; and (5) respect for identifiable policies of law concerning the matter in dispute.[9]

---

[5] 10 *Del. C.* § 6501; *Gannett Co., Inc. v. Bd. of Managers of the Delaware Criminal Justice Info. Sys.*, 840 A.2d 1232, 1237 (Del. 2003).

[6] *See Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479 (Del. 1989). The Unique 2016 Insurers challenge two other factors, which are discussed briefly below.

[7] *XL Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014).

[8] *Id.* at 1217 (quoting *Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009)).

[9] *Schick Inc. v. Amalgamated Clothing and Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987).

Applied to the facts of this case, those factors weigh in favor of finding that the plaintiffs' declaratory judgment claims are ripe. The plaintiffs are named as defendants in the two pending Chancery Cases, and their ability to assess the risks associated with resolving the claims versus proceeding to trial hinges in no small part on an understanding of the insurance coverage available. Delaying a decision as to coverage could result in a substantial expenditure of party and judicial resources to try a case the plaintiffs otherwise would resolve if they understood their exposure risk. Application of the "Bump Up Exclusion" and determination of the relevant policy period likely can be accomplished on the basis of the underlying pleadings and the established facts in the Chancery Cases, and deciding those issues will not impose unreasonably on judicial resources. Finally, allowing this case to proceed is consistent with the purpose of the Declaratory Judgment Act, which is liberally construed to "afford relief from uncertainty and insecurity with respect to rights, status and other legal relations."[10]

The Moving Defendants, however, insist the Delaware Supreme Court's decision in *XL Specialty Insurance Co. v. WMI Liquidating Trust* compels a different conclusion.[11] According to the Moving Defendants, *XL Specialty* stands for the proposition that "any judgment as to the availability of indemnity coverage issued

---

[10] 10 *Del. C.* § 6512.
[11] 93 A.3d 1208 (Del. 2014).

prior to a judgment or settlement of the underlying action would improperly rest on the court's predicted outcome of that underlying action" and therefore declaratory judgment coverage claims are not ripe before the underlying action is resolved.[12] The decision in *XL Specialty* was not nearly so broad. Rather, *XL Specialty* confirms that ripeness depends on the type of case-specific analysis conducted above, and coverage disputes become ripe when a plaintiff "establish[es] a 'reasonable likelihood' that coverage under the disputed policies will be triggered."[13]

In *XL Specialty*, the plaintiff sought a declaration as to whether a particular tower of insurance would provide coverage for potential litigation that had not yet been filed. Importantly, as the *XL Specialty* Court pointed out, another insurance tower was providing coverage for defense costs, the plaintiff had not alleged that that tower was close to being exhausted, and there were no facts from which the Court could find a reasonable likelihood that *any* of the policies in the tower at issue would be triggered.[14] The Supreme Court reasoned that resolving coverage questions under those circumstances "would necessarily be premised on uncertain and hypothetical facts."[15]

---

[12] Opening Br. in Supp. of Mot. of Certain Defs. to Dismiss or in the Alternative Stay, N22C-06-016 AML, at 17.

[13] 93 A.3d at 1218 (quoting *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1133, 1137 (Del. Super. 1992)).

[14] *Id.* at 1222.

[15] *Id.* at 1218.

Notwithstanding that holding, *XL Specialty* and the cases that precede it make clear that, in order to find the plaintiffs' claims are ripe, the Court need not conclude with certainty that the Moving Defendants' policies will be triggered. A reasonable likelihood of coverage is enough.[16] In fact, several policies within Viacom's 2019 tower already have been exhausted through the payment of defense costs. As set forth above, there are disputes regarding the applicable policy period and the meaning of the Bump Up Exclusion that can be resolved now on the basis of concrete facts. If the plaintiffs prevail in their coverage claim, it is reasonably likely that a settlement or judgment could exhaust the entire insurance tower at issue. Under those circumstances, the plaintiffs' claims are ripe.[17]

The Moving Defendants raise two other bases for dismissal. First, the Moving Defendants contend Viacom's policy contains an alternative dispute resolution provision (the "ADR Provision") and the plaintiffs did not allow the "cooling-off period" in that provision to expire before filing their complaints. The ADR Provision pertinently provides: "in the event of mediation, . . . no [] judicial proceeding shall be commenced until at least 60 days after the date the mediation

---

[16] *Id.* at 1217-18.

[17] The plaintiffs acknowledge there may be other coverage issues that could arise depending on the outcome of the Chancery Cases, including with respect to allocation and the conduct exclusion. For the time being, however, there are disputes between the parties that are ripe for resolution by this Court. If the plaintiffs prevail in the dispute regarding the Bump Up Exclusion, and the Court determines the appropriate policy period implicated by the Chancery Cases, the Court could, if necessary, stay the remaining claims until the Chancery Cases are resolved.

shall be deemed concluded or terminated."[18]  It is undisputed that: (i) the parties in the underlying Chancery Cases mediated those disputes in January 2022; (ii) the insurers and insureds engaged in a coverage-specific mediation in March 2022; and (iii) in both those mediations, the insurers denied any coverage obligations.[19]  The plaintiffs filed their complaints in these cases in June 2022, more than 60 days after the March mediation.  The Moving Defendants, however, argue that another mediation session occurred in May 2022, less than 60 days before the plaintiffs filed suit, the mediation never was concluded or terminated, and the plaintiffs' complaints therefore were premature.  The plaintiffs respond that the May mediation was not related to coverage and point out that several insurers and Ms. Redstone's coverage counsel did not even participate in the May mediation.[20]

The Court cannot resolve a factual dispute in a pleadings-based motion, and that alone is a sufficient basis to deny the motions to dismiss on the basis of the ADR Provision.  In addition, the plaintiffs present a compelling argument that the insurers have uniformly denied coverage, did not change their position in either the January or March mediation sessions, and the May mediation session did not relate in any way to coverage disputes.  Under those circumstances, it is reasonably conceivable

---

[18] 2019-2020 Chubb Primary Policy, Coverage Form § XXIV.  Although the ADR Provision did not require the insureds to mediate, they elected to do so and thereby became subject to the requirements of that clause.

[19] Decl. of Peter Welsh, Esq.; N22C-06-020 AML CCLD, dated Sept. 29, 2022, at ¶¶ 6-7 (hereinafter, "Welsh Decl.").

[20] Welsh Decl. ¶¶ 8-9.

that the mediation could be "deemed concluded or terminated" in March 2022, such that the complaints were filed after the cooling-off period expired. Dismissal on the basis of the ADR Provision therefore is not appropriate at this time.

Finally, the Unique 2016 Insurers argue the plaintiffs' claims against them in the Viacom Coverage Case are not ripe because the plaintiffs only are seeking coverage under Viacom's 2019 tower. The Unique 2016 Insurers contend: (i) the plaintiffs' claims would not affect the Unique 2016 Insurers' rights; (ii) there is no adverse interest between the plaintiffs and the Unique 2016 Insurers; and (iii) the dispute regarding the applicable policy period is not ripe. The Court disagrees. First, the plaintiffs allege there is a dispute regarding which policy period was implicated by the Chancery Cases, and some insurers in the 2019 tower who are not part of the 2016 tower have argued the 2016 policies are triggered for coverage. That dispute is ripe for consideration and places the parties in this case in adverse positions, both as between the various insurers and as to the plaintiffs.[21] Second, the Unique 2016 Insurers' participation in this action is consistent with the Declaratory Judgment Act, which provides that "all persons shall be made parties who have or claim any interest which would be affected by the declaration."[22] Third, the Court can determine what

---

[21] *See, e.g. Benefytt Techs., Inc. v. Capitol Specialty Insur. Corp.*, 2022 WL 16504, at *6-7 (Del. Super. Jan. 3, 2022) (refusing to dismiss insured's declaratory judgment action against insurer in prior policy period when the various insurers were disputing which policy period applied because the insured "ha[d] a legitimate interest in binding all potentially interested and at-risk insurers to the judgment.")

[22] 10 *Del. C.* § 6511.

policy period is implicated now, without relying on hypotheticals, and it is reasonably likely that the Unique 2016 Insurers' policies could be triggered.

For the foregoing reasons, the motions to dismiss in the Viacom Coverage Case and the Redstone Coverage Case are **DENIED**. The defendants shall answer the various complaints and the parties shall confer regarding entry of Case Management Orders in all three coverage cases. To the greatest extent possible, scheduling and discovery should be coordinated among the three cases. Additionally, within three days of this opinion's issuance, the parties in the Viacom Coverage Case shall contact chambers to obtain an argument date for Plaintiff's Motion for Partial Summary Judgment. Once that date is set, counsel shall submit a stipulated briefing schedule. Having stayed briefing on the summary judgment motion at the Moving Defendants' request while the motions to dismiss were resolved, the Court will expect Defendants to agree to prompt deadlines so the summary judgment motion may be addressed as expeditiously as possible. **IT IS SO ORDERED.**

Sincerely,

*/s/ Abigail M. LeGrow*
Abigail M. LeGrow, Judge